|  | AUSA: | Craig Wininger | Telephone: (313) 226-9569 |
|---|---|---|---|
| AO 91 (Rev. 11/11) Criminal Complaint | Special Agent: | Russell Johnson, ATF | Telephone: (662) 274-1043 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

United States of America
v.

**D-1  Rafee GLADSON**
    a/k/a `HOT HEAD'

**D-2  Ibrahim KASHMOLA**

Case No.

Case: 2:20−mj−30396
Assigned To : Unassigned
Assign. Date : 9/23/2020
CMP: USA v GLADSON, et al (MAW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __September 22, 2020__ in the county of __Wayne__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:
See attached affidavit

☐ Continued on the attached sheet.

_Complainant's signature_

Russell Johnson, Special Agent, ATF
_Printed name and title_

Sworn to before me and signed in my presence
and/or by reliable electronic means.

_Judge's signature_

Date: 09/23/2020

City and state: Detroit, MI

Hon. Elizabeth A. Stafford, United States Magistrate Judge
_Printed name and title_

## AFFIDAVIT OF SPECIAL AGENT RUSSELL JOHNSON
## IN SUPPORT OF APPLICATION FOR ARREST WARRANT

I, Russell Johnson, a Special Agent with the Bureau of Alcohol, Firearms, Tobacco, and Explosives, being duly sworn, state as follows:

### AFFIANT'S EXPERIENCE

1. I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7); that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I am a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since November 13, 2005. I am presently assigned to the ATF'S Dallas Field Division/Dallas Group IV/HIDTA. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia. As an ATF Special Agent, I have participated in federal investigations involving the illegal acquisition, distribution, and possession of illegal narcotics, to include but not limited to cocaine, heroin, and methamphetamine. During these investigations, I have participated in various types of investigative techniques, to include electronic surveillance, undercover agents and informants, and controlled purchases of narcotics and

firearms from suspects. I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files. Through my training and experience, I have become familiar with the manner in which illegal narcotics are transported, stored, and distributed, the methods of payment for such illegal narcotics, and the manner in which illegal narcotics traffickers communicate with each other.

## PURPOSE OF AFFIDAVIT

2. This affidavit is made in support of an application for a criminal complaint for Rafee 'HOT HEAD' GLADSON and Ibrahim KASHMOLA.

3. I have probable cause to believe that GLADSON and KASHMOLA, both convicted felons, knowingly possessed a firearm, which traveled in interstate commerce, in violation of Title 18 U.S.C. §§ 922(g)(1).

## THE INVESTIGATION – FACTUAL BACKGROUND

4. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause of a violation of federal criminal offense, specifically and Title 18 U.S.C. §§ 922(g)(1).

## PROBABLE CAUSE

5. On August 27, 2020, ATF Confidential Informant # 11356 ( "CI"), who I believe to be reliable and credible based on corroboration of evidence in this investigation and prior investigations the affiant has worked with the CI, provided information on an individual the CI met who referred to himself as "HOT HEAD" (later identified as GLADSON). The CI originally met GLADSON on August 27, 2020 at the Semma Party Store, located at 19345 West Warren Avenue, Detroit, MI. GLADSON identified himself to the CI as a Latin Count street gang member and stated that GLADSON had a five (5) point star under his eye, as did the unknown passenger who was in GLADSON'S vehicle. It should be noted, the five (5) point star, similar to a five (5) point crown is a reference to the Folk Nation overall gang family. The CI stated GLADSON was driving a white Jeep Grand Cherokee. The CI stated he and GLADSON discussed firearms and GLADSON told the CI that he would let the CI know if he came across one for sale. GLADSON provided his telephone number to the CI as 313-856-4804.

6. On August 31, 2020, ATF queried '313-856-4804' through a law enforcement database and observed that GLADSON had provided that telephone number to the Northville Police Department during a law enforcement contact. Based off of this information, ATF acquired a booking photograph of GLADSON which showed a five (5) point star beneath GLADSON'S left eye. This photograph was shown to the CI who identified the individual as 'HOT HEAD.'

7. Also on August 31, 2020, GLADSON asked the CI if the CI had a crew that hit 'licks.' In this context, 'licks' is referring to a robbery of some sort. The CI attempted to set up a face to face meeting; however GLADSON did not call him back.

8. On September 21, 2020, GLADSON sent the CI a text message that stated "I got 45 for. 600", to which the CI agreed to purchase the following day (September 22, 2020).



9. On September 22, 2020, ATF conducted an undercover operation in which an ATF undercover (UC) and the CI were to meet with GLADSON to purchase the firearm. During text communication with GLADSON prior to the operation, GLADSON originally told the CI to come to his residence; however the CI informed GLADSON that the CI and UC wanted to conduct the transaction at Autozone, 19322 West Warren Avenue, Detroit, MI, in the Eastern District of Michigan, to which GLADSON agreed.

10. At approximately 4:16pm, once the UC and CI arrived at Autozone, they activated audio/video recording equipment on their persons and inside the undercover vehicle (UCV). The CI sent GLADSON a text message and stated they (UC/CI) had arrived at the Autozone and GLADSON stated that he was on his way. At approximately 4:23pm, GLADSON'S white Jeep Cherokee was observed pulling into the Autozone, followed by a silver Hyundai sedan. The ATF surveillance team observed that there was an unknown passenger in GLADSON'S Jeep and that the Hyundai sedan was only occupied by the driver. It should be noted that the passenger of GLADSON'S Jeep was detained and interviewed and released the same day.

11. After parking, the surveillance team observed GLADSON exit the driver's seat of the Jeep and walk over to the UCV and enter the front passenger seat where he made contact with the UC and asked "You're the one needed the pistol, right?" After the UC confirmed, GLADSON stated his associate had it and he then exited the UCV and was observed by UC directing the driver of the Hyundai to park. The UC and the ATF surveillance team observed GLADSON make contact at the driver's window of the Hyundai sedan. After interacting with the driver (later identified as KASHMOLA), KASHMOLA exited the vehicle and walked towards the UCV with GLADSON. KASHMOLA was observed by ATF surveillance holding the front waistband area of his shorts in a manner that appeared to be an attempt to hold an item in place and conceal it from public view.

KASHMOLA entered the UCV first, sitting in the front passenger seat and then could be heard and seen telling "HOT HEAD" to enter. The UC then observed KASHMOLA retrieve a firearm from his front waistband area and then hand it to the UC.



12. The UC then asked what the price of the firearm was, to which GLADSON answered that it was $600 because the "prices" were "high right now." The UC then asked GLADSON and KASHMOLA who he needed to pay for the firearm, to which KASHMOLA answered himself. At this time, the UC gave the verbal arrest signal and the ATF surveillance team then arrested GLADSON and IBRAHIM without incident.

13. Prior to departing the arrest location, ATF secured GLADSON'S vehicle. While securing the vehicle, ATF observed/recovered six (6) rounds of Remington .22 caliber ammunition and an amount of the illegal narcotic acid. Also found behind the front seat of the vehicle was a holster.

14. Following the arrest, ATF transported GLADSON and IBRAHIM to the ATF Detroit Field Division office to be interviewed. ATF audio recorded the interviews. Prior to interviewing both GLADSON and KASHMOLA, they were both read their Miranda Rights via ATF Form 3200.4- Statement of Rights, which they both acknowledged and both signed.

15. During the interview of GLADSON, GLADSON stated that he owned the Jeep Cherokee and purchased it in May of 2020 from Twins Auto on Joy Road in Detroit, MI for $3,900. GLADSON stated that he had known KASHMOLA for a long time. GLADSON denied any involvement with arranging any transactions. When questioned about his known phone number being the phone used to communicate with the CI arranging the firearm transaction, GLADSON denied that he was using the phone. After again confirming that the Jeep belonged to GLADSON, he was asked about the ammunition located in his vehicle, to which he denied. When asked about the holster, GLADSON said that belonged to one of his girlfriends and that he had stored it in his vehicle for her for approximately two (2) weeks. GLADSON stated the holster was for a "9," referring to a 9mm pistol. When asked again about his involvement in the firearm transaction, GLADSON again denied any involvement and stated that he was just sitting in the backseat of the UCV. GLADSON was then transported to the Dickerson Wayne County Jail due to an outstanding arrest warrant for a probation warrant.

16. During the interview of KASHMOLA, he stated that he had known GLADSON for approximately twelve (12) years. KASHMOLA stated that on today's date, GLADSON began texting him about meeting up and in one (1) text stated that he was at KASHMOLA'S house; however KASHMOLA was not currently home. KASHMOLA ultimately met up with GLADSON and GLADSON asked KASHMOLA to follow him to the Autozone, which KASHMOLA did. KASHMOLA stated that when he parked at Autozone, GLADSON came to his window and retrieved a firearm from inside the sleeve of his jacket and handed it to KASHMOLA. KASHMOLA told GLADSON that he did not want to handle the firearm and did not want to participate in whatever it was GLADSON was doing. GLADSON then told KASHMOLA that if he gave the firearm to the UC, he (KASHMOLA) could leave, to which KASHMOLA finally agreed. KASHMOLA stated that he then concealed the firearm in his front waistband and walked with GLADSON to the UCV and entered the front passenger seat. KASHMOLA stated that he placed the firearm on the center console of the UCV and then he was arrested. KASHMOLA opened his cell phone and showed the Special Agents conducting the interview the text messages sent to him from GLADSON, which confirmed that GLADSON did state he was at KASHMOLA'S house and that he wanted to meet up. KASHMOLA was then transported to the Redford Township Police Department where he will be housed overnight.

## INTERSTATE NEXUS OF FIREARMS

17. The firearm acquired from GLADSON and KASHMOLA on September 22, 2020, in the Eastern District of Michigan is described as One (1) FEG, model GKK45, .45 caliber, semi-automatic pistol, bearing serial number: AA001958, was manufactured in the country of Germany, then imported into the United States by K.B.I. INC., Harrisburg, PA. On September 22, 2020, Interstate Nexus expert ATF SA Carlos Valles conducted a physical examination of the aforementioned firearm and ammunition. SA Valles determined that the firearm and ammunition traveled in Interstate Commerce to arrive in the Eastern District of Michigan.



## FELONY CONVICTIONS- GLADSON and KASHMOLA

18. SA Johnson conducted a National Crime Information Center (NCIC) and Michigan Department of Corrections queries on GLADSON and KASHMOLA. The query of GLADSON revealed that he has been convicted of two (2) felonies in the State of Michigan. The felony convictions are as follows; Home Invasion- 1st Degree, Wayne County, Case Number 16002919-01-FH, and

MDOP of Building $1,000 or More But Less Than $20,000- Attempt, Wayne County, Case Number 15003481-01-FH.

The query of KASHMOLA revealed that he has been convicted of two (2) felonies in the State of Michigan. The felony convictions are as follows; Assault with Dangerous Weapon, Wayne County, Case Number 16001200-01-FC, and Assault with Dangerous Weapon, Wayne County, Case Number 17009810-01-FH. The felony convictions prohibit GLADSON and KASHMOLA from possessing firearms.

## CONCLUSION

19. Based on the foregoing facts and circumstances, I respectfully submit that there is probable cause to believe that on September 22, 2020, within the Eastern District of Michigan, **Rafee 'HOT HEAD' GLADSON** and **Ibrahim KASHMOLA** committed the following criminal offense: Title 18 U.S.C. 922(g)(1)- Felon in Possession of a Firearm.

Respectfully submitted,

Russell Johnson, Special Agent
Bureau of Alcohol, Firearms, Tobacco & Explosives

Sworn to before me and signed in my
presence and/or by reliable electronic means.

HON. ELIZABETH A. STAFFORD
UNITED STATES MAGISTRATE JUDGE

Dated: September 23, 2020